S92A1384. THOMAS v. THE STATE.

(425 SE2d 872)

FLETCHER, Justice.

In the early morning hours of January 13, 1991, a fight broke out in the parking lot of a club in Monticello between a group of youths from Social Circle and a group of youths from Monticello. Charles Anthony Standifer was shot during the fight and, shortly thereafter, died from the wound he had received. Christopher Thomas was convicted of Standifer's murder and was sentenced to life imprisonment.[1] Thomas appeals and we affirm.

1. Considering the evidence in a light most favorable to the verdict, we conclude that a rational trier of fact could have found Thomas guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his sole enumeration of error, Thomas alleges that the trial court erred by permitting the state to call a particular witness. The state had presented its case-in-chief and rested subject to the testimony of the medical examiner, who had been detained by a scheduling conflict. The defense had also presented its case-in-chief and rested subject to rebuttal. The trial court had recessed the proceedings to wait for the medical examiner to arrive. An hour and a half later, the trial court reconvened the proceedings for the state to present a rebuttal witness: Douglas Shockley.

---

[1] Appellant was indicted on February 12, 1991 and his trial began on October 7, 1991; the verdict was returned and sentence was imposed on October 9, 1991. Appellant's timely motion for new trial was denied on June 23, 1992 and his notice of appeal was filed on July 20, 1992. The case was docketed in this court on August 12, 1992 and was submitted for decision without oral argument on September 25, 1992.

Thomas objected arguing that Shockley had not been on the state's list of witnesses and that his expected testimony, which the defense briefly outlined, was direct evidence of Thomas' involvement in the crime alleged and, therefore, should have been part of the state's case-in-chief. Thomas also objected because, in violation of the rule of sequestration, since Shockley's arrival at the courthouse, he had been "in and about" the witnesses that had already testified as well as the deceased victim's family. The state responded that it had just learned of Shockley's existence, that Shockley lived in North Carolina, and had just arrived in town about 25 minutes earlier.

(a) OCGA § 17-7-110 provides:

Prior to his arraignment, every person charged with a criminal offense shall be furnished with a copy of the indictment or accusation and, on demand, with a list of the witnesses on whose testimony the charge against him is founded. Without the consent of the defendant, no witness shall be permitted to testify for the state whose name does not appear on the list of witnesses as furnished to the defendant unless the prosecuting attorney shall state in his place that the evidence is newly discovered evidence which the state was not aware of at the time of its furnishing the defendant with a list of witnesses.

Thomas filed a timely demand for a list of the state's witnesses and it is uncontroverted that Shockley was not on the list provided to Thomas by the state. However, it is also uncontroverted that the state was not aware of Shockley's existence, involvement, or of what his testimony would be until just minutes before he took the stand. Shockley clearly would have fit within the parameters of the newly discovered evidence exception set forth in OCGA § 17-7-110 had the state called him as part of its case-in-chief.

(b) However, the state had already rested its case-in-chief and the defense had just concluded its case-in-chief with Thomas' testimony that: he did not have a gun that evening; he saw an unidentified man in a white Nissan with North Carolina license plates with a gun that evening; he also saw another unidentified man with a gun (the "second gunman"); Thomas struck the second gunman; a gun fired when Thomas struck the second gunman; Thomas was not sure whose gun had fired.

Trial courts have broad discretion in the allowance of rebuttal evidence by both the state and the defendant. In this case, Shockley testified that: on January 13, 1991, he and Standifer had been double-dating; Shockley had driven that night and his car was a white Nissan with North Carolina license plates; he (Shockley) did not have a gun;

after closing the door of Thomas' Blazer on Thomas, Shockley saw Thomas reach into the Blazer's glove compartment, pull out a gun, and shoot Standifer in the chest.

Shockley's testimony directly refuted key portions of Thomas' testimony. The defense was given ample opportunity to interview Shockley before he took the stand and the jury was given appropriate curative instructions concerning the fact that Shockley's violation of the rule of sequestration should be considered by the jury in determining the weight and creditability to be given to Shockley's testimony. Accord *Pippins v. State*, 224 Ga. 462, 464 (162 SE2d 338) (1968); *Wright v. State*, 246 Ga. 53 (268 SE2d 645) (1980). As a result, the trial court clearly did not abuse its discretion by allowing Shockley to testify in rebuttal.

*Judgment affirmed. Clarke, C. J., Hunt, P. J., Benham, Sears-Collins and Hunstein, JJ., concur.*

DECIDED FEBRUARY 18, 1993.

*Michael R. Jones,* for appellant.

*Joseph H. Briley, District Attorney, James L. Cline, Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Mary H. Hines, Staff Attorney,* for appellee.

